AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with QuickBooks accounts as<br>described in Attachment A | )<br>)<br>)<br>)<br>)<br>) Case No. 3:25-mc-587 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information associated with QuickBooks accounts, as described in Attachment A hereto

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 7201 | Tax Evasion |
| 26 U.S.C. § 7202 | Willful Failure to Account for and Pay Over Tax |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Raymon Gragg, SA, IRS CI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone at 1:03 _____ p.m. *(specify reliable electronic means)*

Date: _____ May 21, 2025 _____

_____
*Judge's signature*

City and state: _____ Portland, Oregon _____

Hon. Jeffrey Armistead, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:                    AFFIDAVIT OF RAYMON GRAGG

**Affidavit in Support of an Application for a Search Warrant**

I, Raymon Gragg, being duly sworn, do hereby depose and state as follows:

**Introduce and Agent Background**

1.      I am a Special Agent of the Internal Revenue Service Criminal Investigation

("IRS CI") and have been so employed since September 10, 2014.   My formal education

includes a Master's Degree in Accounting from the University of Denver.   During my

employment, I have conducted and/or assisted in criminal investigations involving tax fraud,

money laundering, and other related federal violations.   I have been trained in tax and financial

investigative techniques at the Federal Law Enforcement Training Center in Glynco, Georgia,

which emphasized the enforcement of Title 26 criminal tax offenses and tax-related Title 18 and

Title 31 offenses.   Additionally, I have received training in the preparation for and execution of

search warrants.   Through my training and experience, I have become familiar with the types of

records businesses typically maintain in the course of their regular activity including ledgers,

journals, invoices, receipts, bank documents and correspondence including e-mail.   A large part

of my duties as an IRS CI Special Agent involves analyzing these types of records to determine

the existence of criminal activity and to find evidence of criminal activity.

2.      I submit this affidavit in support of an application for a search warrant under 18

U.S.C. § 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Intuit, Inc. to disclose to the

government records and other information in Intuit's possession pertaining to the accounts

described in Attachment A to this affidavit.   As set forth below, I have probable cause to believe

that the accounts described in Attachment A contain evidence, as set forth in Attachment B to

**Affidavit of Raymon Gragg**                                                    **Page  1**

this affidavit, of violations of 26 U.S.C. § 7201 (Tax Evasion), and 26 U.S.C. § 7202 (Willful Failure to Account For and Pay Over Employment Tax).

3.      Intuit, Inc. is a business and financial software company that develops and sells financial, accounting, and tax preparation software and related services for small businesses, accountants, and individuals, including QuickBooks Online.   The company is headquartered in Mountain View, California, and accepts legal process through its agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808.   This affidavit is made in support of an application for a search warrant for records relating to QuickBooks Online accounts maintained by Intuit on its computers and servers.

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

**Target Offenses**

5.      I believe there is probable cause to believe that evidence of the following violations ("Target Offenses") will be found in the places to be searched:

**Affidavit of Raymon Gragg**                                                    **Page  2**

a. **Tax Evasion**.  26 U.S.C. § 7201 prohibits the willful attempt to evade or defeat the assessment of a tax, and the willful attempt to evade or defeat the payment of a tax.

b. **Willful Failure to Account For and Pay Over Tax**.  26 U.S.C. § 7202 makes it a violation for any person required under this title to collect, account for, and pay over any tax imposed by this title, to willfully fail to collect or truthfully account for and pay over such tax.   The duty of employers to truthfully account for and pay over is created by 26 U.S.C. §§ 3102(s), 3111(a), and 3402.

### Relevant Electronic and Wire Communication Statutes

6.    The relevant federal statutes involved in the disclosure of customer communication records for the requested data in the Accounts are as follows:

a.    18 U.S.C. § 2703(a) provides, in part: "A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court of competent jurisdiction."

b.    18 U.S.C. § 2703(b)(1) provides, in part: "A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication . . . (A) without required notice to the subscriber or customer, if the

**Affidavit of Raymon Gragg**                                                    **Page 3**

governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court of competent jurisdiction."

      c.    18 U.S.C. § 2703(c)(1) provides, in part: "A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) . . . when the governmental entity—(A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court of competent jurisdiction."

      d.    18 U.S.C. § 2510(1) defines a "wire communication" as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce."

      e.    18 U.S.C. § 2510(12) defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo optical system that affects interstate or foreign commerce," with certain exceptions not applicable here.

      f.    18 U.S.C. § 2510(17) defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic

transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

       g.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A) and 2711. Under 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

### Statement of Probable Cause

      7.     IRS CI is investigating Jeffrey Kruse ("KRUSE") for violations of Title 26 of the United States Code. Based upon IRS CI's investigation to date, I believe that KRUSE orchestrated a large scale, multi-year, payroll tax evasion scheme. Additionally, I believe that KRUSE failed to account for and pay over the employee's share of Federal Insurance Contribution Act ("FICA") taxes and the withholding tax on wages applicable to individual income taxes.[1] [2] As detailed below, KRUSE operated the healthcare staffing companies Integrated Healthcare of Arizona LLC ("IHA"), Integrated Healthcare Staffing LLC ("IHS"), IHS California LLC ("IHS California"), Integrated Medical Systems LLC ("IMS"), and Integrated Healthcare Solutions LLC ("SOLUTIONS") (collectively, this group of businesses is referred to as "INTEGRATED"). I believe that KRUSE underreported the amount of wages paid to INTEGRATED employees and the amount of trust fund taxes withheld by INTEGRATED. The purpose of this is twofold: (1) to evade paying the IRS the trust fund taxes withheld from employees, and (2) to evade paying the employer's share of FICA taxes.

---

[1] The withheld sums of these taxes are commonly referred to as trust fund taxes.
[2] Social security tax and Medicare tax are imposed by FICA.

**Affidavit of Raymon Gragg**                                                **Page 5**

8.      During the IRS audit, and the subsequent investigation, IRS CI learned that INTEGRATED used Intuit's QuickBooks accounting software to process accounting and payroll.   Intuit has identified three QuickBooks Online accounts and two QuickBooks desktop accounts for INTEGRATED, which for the reasons described below; I believe will contain evidence of the Target Offenses.    Accordingly, this application seeks a warrant to require Intuit to provide information from the QuickBooks accounts, as described in Attachment B.

**IRS Audit of IMS**

9.      In July 2020, the IRS initiated an audit of IMS.    IRS records indicated that IMS filed more than 1,700 IRS Wage and Tax Statement Forms W-2 ("Form W-2") for wages paid to employees during the years 2013 through 2018, and that more than 850 of the Forms W-2 underreported the wages paid to employees, underreported the federal income tax withheld, underreported the social security tax withheld and underreported the Medicare tax withheld from employees, when compared to the employees' Forms W-2 that the employees included with their filed individual income tax returns.    The IRS identified a similar pattern of Form W-2 variances, on filings of the INTEGRATED companies, with unreported wages, and unreported employment taxes for the years 2013 through 2019.

10.      On November 18, 2020, IRS Revenue Agent Debbie Diaz interviewed KRUSE as part of the audit.    KRUSE explained that he owned INTEGRATED and that he established the business in 1999.    KRUSE said the INTEGRATED books and records were maintained in Excel software, and a QuickBooks payroll system.    KRUSE said that the year 2018, was typical of past years, and that no unusual events occurred in the year.    KRUSE said that he and a couple of

**Affidavit of Raymon Gragg**                                 **Page 6**

staff workers prepare payroll.   KRUSE said that he signed the IRS Forms 941 Employer's

Quarterly Federal Tax Return ("Form 941") for INTEGRATED, that he signed and approved the

checks, and that he prepared and mailed the Forms W-2 and IRS Forms W-3 Transmittal of

Wage and Tax Statements ("Form W-3").   Based on these facts, I believe that KRUSE was a

responsible party under 26 U.S.C. § 7202 for collecting and paying over taxes to the IRS.

11.      During the IRS audit, KRUSE provided the IRS with some of the payroll records

on the entity IMS.   In October 2020, KRUSE provided (1) an electronic spreadsheet of direct

deposit liabilities ("Direct Deposit file") related to employee paychecks, (2) a spreadsheet of part

of the General Ledger, (3) a spreadsheet of the Payroll Register ("Payroll Register") identifying

the gross and net pay of employees, and (4) copies of the Forms W-2.   In March 2021, KRUSE

provided the IRS with a letter in response to the IRS' request for information on how the IMS

Forms W-2 filed with the Social Security Administration differed from many of the Forms W-2

provided to the employees.   KRUSE wrote that "Some of the employees W-2 forms may not

have been fully compiled at the time of the SSA submission process, before the W-2 forms were

provided to the employees."

12.      IRS CI reconciled the records KRUSE provided during the audit to the forms that

KRUSE filed with the IRS.   The Forms W-2 reconciled to the Payroll Register, and both were

consistent with the 2018 Forms W-2 that KRUSE filed, for IMS, with the Social Security

Administration ("SSA").   Additionally, these records are consistent with the four quarterly

Forms 941 KRUSE filed for IMS for the year 2018.   Based on this information, I believe that

**Affidavit of Raymon Gragg**                                                    **Page  7**

KRUSE made representations to the IRS that the records he provided to the IRS during the audit were the accurate records of the IMS business for 2018.

13.     IRS CI identified inconsistencies between the Direct Deposit file, and the Payroll Register and Forms W-2 that KRUSE provided to the IRS.   The Direct Deposit file identifies the total net payments, via direct deposit, to IMS employees in 2018.   For example, one IMS employee Employee-1 received total net direct deposits of $31,077.   The Payroll Register and Form W-2 identify gross pay, and deductions from gross pay, which can be analyzed to identify net pay or net deposits.   KRUSE's Payroll Register and Form W-2 values for Employee-1 can be reconciled as:

| Employee-1 Employer Form W-2 | |
|---|---|
| Gross pay: | $29,475 |
| Less: Federal income tax withholding: | $2,964 |
| Less: Employee Medicare withholding: | $427 |
| Less: Employee social security withholding: | $1,827 |
| Equals: Expected net pay from records: | $24,527 |

When the same analysis is used to reconcile the Form W-2 that Employee-1 filed with the IRS, the expected net pay from records is $31,077, which is equal to the total net direct deposits on the Direct Deposit file.

| Employee-1 Employee Form W-2 | |
|---|---|
| Gross pay: | $37,555 |
| Less: Federal income tax withholding: | $3,605 |
| Less: Employee Medicare Withholding: | $545 |
| Less: Employee social security Withholding: | $3,605 |
| Equals: Expected net pay from records: | $31,077 |

**Affidavit of Raymon Gragg**                                                                 **Page 8**

14.     Based on these variances, and information summarized in this affidavit I believe that KRUSE provided false records to the IRS, and made false statements to the IRS, during the audit, to conceal the employment tax evasion scheme, and the unpaid trust fund taxes.

**IRS Forms W-2 and Forms W-3**

15.     A business is required to file IRS Form(s) W-2 if it pays one or more employees, for services to the business, during the year.    Form W-2 includes identification information of the employer and the employee and financial information including: (1) wages, tips and compensation paid to the employee; (2) Federal income tax withheld from the employee's wages; (3) social security tax withheld from the employee's pay; (4) Medicare tax withheld from the employee's pay; and (5) other financial information.

16.     Form W-2 is a multi-part form in which copies of each form are produced for designated parties.    Employers are required to file one copy (Copy A) of each Form W-2 with the SSA by January 31 of the following year.    Employers are required to provide two copies (Copy B & C) of Form W-2 to each employee by January 31 of the following year.    Employers are required to keep a copy (Copy D) of each Form W-2 for four years.

17.     IRS Form W-3 is required for any business that is required to file a Form W-2. Form W-3 is filed by the employer with the SSA, at the time the employer files Copy A of Forms W-2.    Form W-3 is used to report information including; (1) the total number of Forms W-2 filed with the Form W-3; (2) the total wages, tips and other compensation reported on Forms W-2; (3) the total federal income tax withheld reported on Forms W-2; (4) the total social security tax withheld reported on Forms W-2; (5) the total Medicare tax withheld reported on Forms W-

**Affidavit of Raymon Gragg**                                                                 **Page 9**

2; (6) other financial information; and (7) a jurat affirming that the Form W-3 and the accompanying information is true and accurate.

18.     After the SSA processes the Form W-2 and Form W-3, they transmit the federal tax information to the IRS.   Amounts reported on related employment tax forms such as Forms W-2, and Forms 941 should agree with amounts reported on Forms W-3.

19.     IRS CI obtained INTEGRATED Forms W-2 and Forms W-3, for the years 2018 and 2019 from the SSA.   In both 2018 and 2019, KRUSE electronically filed Forms W-2 and Forms W-3, for IHS, IMS and SOLUTIONS.   In both 2018 and 2019, KRUSE filed physical Forms W-2 and Forms W-3, and signed the jurats, for IHA and IHS California.

20.     In addition to the Forms W-2 that a business files with the SSA, the IRS also obtains a copy of the Form W-2 when the employee of the business files a U.S. Individual Income Tax Returns Form 1040 ("Form 1040").[3]   The employee's copy of the Form W-2 ("Employee W-2") should contain identical information to the Form W-2 filed by employer ("Employer W-2").   If an INTEGRATED employee filed a Form 1040 tax return and attached the Employee W-2, then the IRS can reconcile the values to the Employer W-2 that INTEGRATED filed with the SSA.

21.     IRS CI identified more than 1,200 cases, from 2018 or 2019, in which INTEGRATED's Employer W-2 did not reconcile to the Employee W-2, and which indicated the Employer W-2 underreported wages by more than $500.   The variances between the Employer W-2 and the Employee W-2 occur in one or both of the following categories; (1)

---

[3] IRS instructions direct Form 1040 filers that received a Form W-2, to attach Copy B of the Form W-2 to the tax return.   If the Form 1040 is filed electronically then the copy of the Form W-2 is not applicable.

**Affidavit of Raymon Gragg**                                                **Page 10**

Employee W-2 wages, social security tax withholding and Medicare tax withholding are greater than Employer W-2 wages, social security tax and Medicare tax withholding; and (2) Employee W-2 federal income tax withholding is greater than Employer W-2 federal income tax withholding.[4]   IRS CI identified these W-2 variances on each of the INTEGRATED entities in 2018 and 2019, and in some INTEGRATED entities as far back as 2013.   In contrast, IRS CI only identified 16 cases where the Employer W-2 wages exceeded the reported Employee W-2 wages, and only 8 cases with a variance over $500.   Based on this information, I believe that KRUSE filed more than 1,200 false Forms W-2, and eight false Forms W-3 with the IRS, for the years 2018 and 2019.

22.    FIGURE 1 and FIGURE 2 below are examples of the variance between INTEGRATED's Employee W-2 and Employer W-2 for one individual employee.   The Employer W-2 underreports wages by $637.36, and trust fund taxes by $134.77.[5]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4]  Social security tax withholding and Medicare tax withholding are calculated from a percentage of wages.
[5]  $134.77 underreported trust fund tax = federal income tax variance $86.00 + social security withholding variance $39.52 + Medicare tax withholding variance $9.25.

**Affidavit of Raymon Gragg**                                                    **Page 11**

FIGURE 1: Employee W-2



FIGURE 2: Employer W-2

23.     I summarized the variances between INTEGRATED's 2018 Employee W-2s and Employer W-2s on Table 1.   In 2018, KRUSE failed to report $1,662,885 of wages, and failed to report or pay approximately $266,379 of INTEGRATED's trust fund taxes.

| Table 1: 2018 Form W-2 Variances | | | | |
| Entity | Unreported Wages | Unreported Federal Income Tax Withholding | Unreported FICA Tax Employee Withholding | Total Unreported Trust Fund Taxes |
|---|---|---|---|---|
| IHA | 62,419 | 2,666 | 4,766 | 7,432 |
| IHS | 348,765 | 27,128 | 26,805 | 53,933 |
| IHS CALIFORNIA | 45,506 | 4,105 | 3,496 | 7,601 |
| IMS | 405,181 | 52,362 | 31,462 | 83,824 |
| SOLUTIONS | 801,014 | 52,137 | 61,452 | 113,589 |
| **Total** | $    1,662,885 | $    138,398 | $    127,981 | $    266,379 |

24.     I summarized the variances between INTEGRATED's 2019 Employee W-2s and Employer W-2s on Table 2.   In 2019, KRUSE failed to report approximately $1,195,400 of wages, and failed to report or pay approximately $187,526 of INTEGRATED's trust fund taxes.

| Table 2: 2019 Form W-2 Variances | | | | |
| Entity | Unreported Wages | Unreported Federal Income Tax Withholding | Unreported FICA Tax Employee Withholding | Total Unreported Trust Fund Taxes |
|---|---|---|---|---|
| IHA | 108,951 | 7,864 | 8,381 | 16,245 |
| IHS | 207,567 | 7,882 | 15,985 | 23,867 |
| IHS CALIFORNIA | 18,225 | 338 | 1,403 | 1,741 |
| IMS | 366,799 | 31,615 | 28,072 | 59,687 |
| SOLUTIONS | 493,858 | 48,085 | 37,901 | 85,986 |
| **Total** | $    1,195,400 | $    95,784 | $    91,742 | $    187,526 |

25.     For the years 2018 and 2019, I found that INTEGRATED's Employer W-2s reconciled to the Forms W-3 with matching or consistent values of wages, FICA taxes and

**Affidavit of Raymon Gragg**                                                                 **Page  13**

federal income tax withheld.   Based on this information, I believe that KRUSE filed false Forms W-2 and Forms W-3 with the IRS in an attempt to evade the assessment of employment taxes.

**IRS Forms 941**

26.     Businesses are required to file Forms 941 if they pay wages subject to federal income tax withholding or social security and Medicare taxes.   Form 941 must be filed quarterly and report the following: (1) wages, tips and compensation paid; (2) Federal income tax withheld from employee compensation; (3) both the employee and the employer share of social security and Medicare tax withheld from employee compensation.   Form 941 includes a jurat requiring the filer to swear to the accuracy of the information in the form.[6]

27.     In both 2018 and 2019 KRUSE filed Forms 941 for IHA, IHS, IHS CALIFORNIA, IMS and SOLUTIONS.   KRUSE signed the jurat on the Forms 941.[7] INTEGRATED's Vice President of Operation said that KRUSE worked on INTEGRATED's quarterly taxes.

28.     Analysis of the four quarterly Forms 941 communicates information about the annual payroll values of the business.   The sum of each quarter's wages, tips and other compensation is equal to the total compensation paid by the business during the year.   The sum of each quarter's federal income tax withheld from employee compensation is equal to the total

---

[6] Per 26 U.S.C. § 6065 except as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury.   This is commonly known as a jurat.
[7] KRUSE's signature was identified on IHA Forms 941 2018 Q1 through 2019 Q1 and 2019 Q3 and Q4. KRUSE's signature was identified on IHS Forms 941 2018 Q1 through 2019 Q4.   KRUSE's signature was identified on IHS CALIFORNIA Forms 941 2018 Q2 through 2019 Q4.   KRUSE's signature was identified on SOLUTIONS Forms 941 2018 Q1 through 2019 Q4.   KRUSE is the only known signer of INTEGRATED's tax returns.   KRUSE told the IRS that he signed the employment tax returns.   The IRS has requested copies of the original tax returns to identify the signer of the jurat on the remaining returns.

**Affidavit of Raymon Gragg**                                                       **Page  14**

federal income tax withheld from employee compensation during the year.   The sum of each quarter's FICA taxes is equal to the total FICA taxes due during the year.   Further, because FICA taxes are imposed on employees and employers, the total FICA taxes during the year is equal parts of FICA taxes withheld from employee's compensation and from the employer's share of FICA taxes.[8]

29.     For the years 2018 and 2019, I found that INTEGRATED's combined quarterly Forms 941 approximately reconciled to the Forms W-3 and Employer W-2s with matching or consistent values of wages, FICA taxes, and federal income tax withheld.[9]   In contrast, the Employee W-2s with variances in wages and taxes do not reconcile to the Forms 941. Accordingly, based on the tax variances on the Forms W-2 I believe KRUSE filed false Forms 941 in a payroll tax evasion scheme, to evade the assessment of $673,628 of federal payroll taxes, on the INTEGRATED entities, during the eight quarters between 2018 Quarter 1 – and 2019 Quarter 4.   Further, I believe KRUSE willfully failed to pay over $453,905 of trust fund taxes to the IRS, which KRUSE withheld from his employee's pay during the eight quarters between 2018 Quarter 1 – and 2019 Quarter 4.[10]

---

[8]  Additional Medicare tax is required to be withheld from employee's compensation, on pay in excess of $200,000 in a calendar year, and reported on Form 941.   This event did not occur for a KRUSE entity in 2018 or 2019.

[9]  Form 941 reports the combined value of the employee's portion of social security tax and the employer's portion of social security tax.   Form 941 reports the combined value of the employee's portion of Medicare tax and the employer's portion of Medicare tax.   The reconciliation was applied to the employee's portion of the social security tax and Medicare tax.

[10]  Table 3

**Affidavit of Raymon Gragg**                                                                      **Page  15**

| Table 3: 2018 and 2019 Additional Tax Due & Owing | | | | |
|---|---|---|---|---|
| Entity | Year | Unreported Trust Fund Taxes | Employee Portion of FICA | Additional Tax Due & Owing |
| IHA | 2018 | 7,432 | 4,766 | 12,198 |
| IHS | 2018 | 53,933 | 26,805 | 80,738 |
| IHS CALIFORNIA | 2018 | 7,601 | 3,496 | 11,097 |
| IMS | 2018 | 83,824 | 31,462 | 115,286 |
| SOLUTIONS | 2018 | 113,589 | 61,452 | 175,041 |
| IHA | 2019 | 85,986 | 8,381 | 94,367 |
| IHS | 2019 | 23,867 | 15,985 | 39,852 |
| IHS CALIFORNIA | 2019 | 1,741 | 1,403 | 3,144 |
| IMS | 2019 | 59,687 | 28,072 | 87,759 |
| SOLUTIONS | 2019 | 16,245 | 37,901 | 54,146 |
| **Total Unreported Trust Fund Taxes** | | $453,905 | | |
| **Total Unreported Employment Tax** | | | | $673,628 |

## Records Held by Provider

30.     In response to an IRS CI summons, Intuit confirmed that it had QuickBooks

accounts for INTEGRATED including:

    a.  Integrated Medical Systems LLC, (Tax ID ending 7011), Intuit Customer

        Account No: 849113079, PSID: 653000899, account created January 3,

        2014, Enhanced Payroll for QuickBooks Enterprise Bundle

    b.  IHS California LLC, (Tax ID ending 8986), Intuit Customer Account No:

        849113079, PSID: 107401719, account created January 3, 2014, Enhanced

        Payroll for QuickBooks Enterprise Bundle

    c.  Integrated Healthcare Staffing LLC, (Tax ID ending 2981) Intuit

        Customer Account No: 849113079, PSID: 641001675, account created

        June 2, 2012, QuickBooks Payroll Standard

    d.   Integrated Healthcare Solutions LLC, (Tax ID ending 8036), Intuit Customer Account No: 849113079, PSID: 641000761, account created April 20, 2013, QuickBooks Payroll Standard

    e.   Integrated Healthcare of Arizona LLC (Tax ID ending 4668), Intuit Customer Account No: 849113079, PSID: 641001856, account created January 3, 2014, Enhanced Payroll for QuickBooks Enterprise Bundle.

31.    Intuit confirmed that INTEGRATED purchased desktop products for IMS and IHS and online services for IHA, IHS California and SOLUTIONS.   The account records reveal that KRUSE applied for the Intuit accounts, and was the named point of contact between INTEGRATED and Intuit.

32.    INTEGRATED's Payroll Specialist confirmed that INTEGRATED used QuickBooks payroll services, that KRUSE used and/or had access to QuickBooks and that KRUSE was involved in the preparation of Forms W-2.   Additionally, during the audit, KRUSE told the IRS that INTEGRATED's books and records were maintained in QuickBooks and that he had access to the records.

33.    In my training and experience, I have learned that Intuit provides a variety of desktop and online services, including QuickBooks online, to the public.   Intuit offers at least five different versions of its QuickBooks software to its subscribers as online programs, including QuickBooks Online Essentials, QuickBooks Online Plus, and QuickBooks Online Advanced.

**Affidavit of Raymon Gragg**                                            **Page  17**

34.    Intuit's most popular version of the online program, QuickBooks, allows its users to (i) track income and expenses, (ii) capture and organize receipts, (iii) maximize tax deductions, (iv) invoice and accept payments, (v) track mileage, (vi) send estimates, (vii) track sales and sales tax, (viii) manage 1099 contractors, (ix) run comprehensive reports, (x) manage bills, (xi) track time and (xii) process payroll.

35.    Subscribers obtain a QuickBooks account by registering with Intuit. During the registration process, Intuit asks subscribers to provide basic personal information. Therefore, the computers of Intuit are likely to contain stored electronic data and information concerning subscribers and their use of Intuit services, such as account access information, transaction information, and account application information.   In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's subscribers or users.

36.    QuickBooks payroll services allow the subscriber to process employee payroll and pay employees with direct deposits.   During the payroll process, the Intuit subscriber communicates information to Intuit such as the transaction date, the employee names, and the value of net pay to the employee.   Therefore, the computers of Intuit are likely to contain stored electronic data and information concerning payroll transactions.   In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify dates, amounts and payment method to employees.

37.    An Intuit subscriber can also store files with Intuit, such as address books, contact or buddy lists, calendar data, and other files, on servers maintained and/or owned by Intuit.   In

my training and experience, evidence of who was using a QuickBooks account may be found in address books, contact or buddy lists, messages in the account, and attachments to messages, including files.

38.     In my training and experience, online service providers generally ask their subscribers to provide certain personal identifying information when registering for a QuickBooks account.   Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).   In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's subscribers or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

39.     In my training and experience, online service providers typically retain certain transactional information about the creation and use of each account on their systems.   This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.   In addition, service providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins

**Affidavit of Raymon Gragg**                                                    **Page  19**

to the account.   Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the QuickBooks user account.

40.     In my training and experience, in some cases, QuickBooks subscribers will communicate directly with the service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.   Service providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.   In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's subscribers or users.

41.     This application seeks a warrant to search all responsive records and information under the control of Intuit, a provider subject to the jurisdiction of this Court, regardless of where Intuit has chosen to store such information.   The government intends to require the disclosure pursuant to the requested warrant of the contents of the QuickBooks data for the customers or subscribers if such record, or other information is within Intuit's possession, custody, or control, regardless of whether such record or other information is stored, held, or maintained outside the United States.

42.     I am aware that computers located at Intuit or Intuit's servers contain information and other stored electronic communications belonging to unrelated third parties.   Accordingly, this affidavit and application for search warrant seeks authorization solely to search the computer

**Affidavit of Raymon Gragg**                                              **Page  20**

accounts and files by following the procedures described in my affidavit, for the information identified in Attachment A.

43.     An IRS administrative summons was previously served on Intuit for records of several of the INTEGRATED entities.

**Nature of Examination**

44.     During its review of the information received from Intuit under this warrant, law enforcement will segregate the information into two groups: (i) information that is responsive to the warrant and that the government may therefore seize; and (ii) information that is not responsive to the warrant.   This review will be performed within a reasonable amount of time not to exceed 180 days from the date of execution of the warrant.   If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court.

45.     Information that is responsive to the warrant will be copied onto a separate storage device or medium.   Responsive information may be used by law enforcement in the same manner as any other seized evidence.   Information that is not responsive to the warrant will be sealed and stored on a secure medium or in a secure location.   Nonresponsive information will not be reviewed again without further order of the Court (e.g., subsequent search warrant or order to unseal by the district court).

46.     The government will retain a complete copy of the information received from Intuit for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of

data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Conclusion**

47.     Based on the foregoing, I have probable cause to believe, and I do believe, that Jeffrey KRUSE committed the Target Offenses, and that evidence of those offenses, as more fully described in Attachment B hereto, are presently contained in the Accounts, which are more fully described above and in Attachment A hereto.   I therefore request that the Court issue a warrant authorizing a search of the Accounts described in Attachment A for the items listed in Attachment B and the examination and seizure of any such items found.   The government will execute this warrant by serving the warrant on Intuit.   Because the warrant will be served on Intuit, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

48.    Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Andrew Ho.   I was informed that it is AUSA Ho's opinion that the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

_By phone pursuant to Fed. R. Crim. P. 4.1_
RAYMON GRAGG
Special Agent
Internal Revenue Service
Criminal Investigation

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 1:03 p.m. on May 21, 2025.

HONORABLE JEFFREY ARMISTEAD
United States Magistrate Judge

**Affidavit of Raymon Gragg**                    **Page 23**

**ATTACHMENT A**

**Locations to Be Searched**

This warrant applies to information associated with QuickBooks accounts held by Jeffrey KRUSE, and INTEGRATED, which is stored at premises owned, maintained, controlled or operated by Intuit, Inc., a company headquartered at 2632 Marine Way, Mountain View, CA 94043:

1. Account name: Integrated Medical Systems LLC

   Customer Account #: 849113079

   Merchant ID: 5247719939463304

   Merchant ID: 5247710022905723

2. Account name: IHS California LLC

   Customer Account #: 849113079

3. Account name: Integrated Healthcare Staffing LLC

   Customer Account #: 311826383

4. Account name: Integrated Healthcare Solutions LLC

   Merchant ID: 5247719929814227

5. Account name: Integrated Healthcare of Arizona LLC

   Customer Account #: 849113079

**ATTACHMENT B**

**Particular Things to be Seized**

**I.     Information to be disclosed by Intuit, Inc. (the "Provider")**

For the time period January 1, 2018 through January 1, 2020, to the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(d), the Provider is required to disclose the following information to the government for each account identified in Attachment A:

1.     The contents of all online information associated with each QuickBooks account, including stored or preserved copies of records from the account, draft reports, and other tax, accounting, bookkeeping, payroll and financial documents, including "Employee Earning Summary" and "Direct Deposit Liabilities" spreadsheets, general ledgers, and profit and loss or balance statements;

2.     All records or other information regarding the identification of each QuickBooks account, to include full name, physical address, telephone numbers and other identifiers for the subscribers and registered users of the account, records of session times and durations of use, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

3.     The types of service utilized by each QuickBooks account;

4.     All records or other information stored at any time by the subscriber or user of each QuickBooks account, including address books, user audit logs, contact and buddy lists, calendar data, pictures, and files;

5.      All records pertaining to communications between the Provider and any person regarding each QuickBooks account, including contacts with support services and records of actions taken; and

6.      For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 26, United States Code, Sections 7201 (tax evasion), and 7202 (willful failure to collect or pay over employment taxes) by KRUSE and others occurring from January 1, 2018, through January 1, 2020, including, for each account or identifier list on Attachment A, information pertaining to the following matters:

1.      Records with information at variance with forms submitted to the Social Security Administration or Internal Revenue Service.

2.      Records with information at variance with forms submitted to employees of companies owned or operated by KRUSE.

3.      Communications, records, and files associated with or attached to communications, and transactional data that constitute evidence of, that may have been used to facilitate, and that were capable of being used to commit or further violations of Title 26, United States Code, Sections 7201 and 7202 and to create, access, or store evidence of such crimes.

4.      Information relating to who created, used, and communicated with the account, including records about their identities and whereabouts.

5.      Information indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner.

6.      Evidence indicating the account owner's and user's state of mind as it relates to the crime(s) under investigation.

III.    **Search Procedure**

A.    The warrant will be executed under the Electronic Communications Privacy Act, in particular 18 U.S.C. § 2703(a), (b)(1)(A), and (c)(1)(A), and will require Provider to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of this attachment.

B.    During its review of the information received from Provider under this warrant, law enforcement will segregate the information into two groups: (i) information that is responsive to the warrant and that the government may therefore seize; and (ii) information that is not responsive to the warrant.  This review will be performed within a reasonable amount of time not to exceed 180 days from the date of execution of the warrant.  If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court.

C.    Information that is responsive to the warrant will be copied onto a separate storage device or medium.  Responsive information may be used by law enforcement in the same manner as any other seized evidence.  Information that is not responsive to the warrant will be sealed and stored on a secure medium or in a secure location.  Nonresponsive information will not be reviewed again without further order of the Court (e.g., subsequent search warrant or order to unseal by the district court).

D.    The government will retain a complete copy of the information received from Provider for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.